# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK PATTERSON CUSTOM HOMES, INC., PATRICK PATTERSON DEVELOPMENT, INC., PATRICK H. PATTERSON and ALICIA PATTERSON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 7204 |
| v. | ) ) | Magistrate Judge Morton Denlow |
| KATHLEEN M. BACH, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Patrick Patterson Custom Homes, Inc., Patrick Patterson Development, Inc., Patrick H. Patterson and Alicia Patterson ("Plaintiffs"), filed a three-count amended complaint ("Amended Complaint") against their administrative assistant, Kathleen M. Bach ("Defendant"), alleging that she embezzled substantial funds from Plaintiffs. Dkt. 23.[1] Plaintiffs' Amended Complaint raises the following claims: (1) Count I for violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) Count II for common law fraud; and (3) Count III for breach of the duty of loyalty. Defendant now moves to dismiss all three counts pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 28. For the reasons stated below, the Court denies Defendant's motion to dismiss.

---

[1]Dkt. __ refers to the docket number of the pleading.

# I. BACKGROUND

**A.     Factual Background**

The following is alleged in the Amended Complaint.  Plaintiffs Patrick Patterson Custom Homes, Inc. and Patrick Patterson Development, Inc. are Illinois corporations that operate a construction business in Libertyville, Illinois. Am. Comp. at ¶¶ 1-2, 8.  Plaintiffs Patrick H. Patterson, the sole shareholder of both corporations, and Alicia Patterson both manage the business out of a home office**.**  *Id.* at ¶¶ 1-4, 8.

Defendant worked for Plaintiffs as an administrative assistant from 1998 until April 30, 2007.  *Id.* at ¶¶ 5, 9.  Responsible for paying bills for Plaintiffs, Defendant had access to corporate accounts and the personal checkbook of the individual Plaintiffs. *Id.* at ¶ 10.  She also used a signature stamp for Patrick H. Patterson in order to effectuate authorized payments.  *Id.* Transacting business with Plaintiffs' customers, vendors and personal creditors in a number of states, Defendant used Plaintiffs' laptop computer to "engage in e-email communications and on-line remittance and transfer of funds in interstate commerce."  *Id.*

Plaintiffs allege that in late 2006, Plaintiffs discovered Defendant had used their accounts and signature stamp to write checks to herself or to pay her personal expenses.  *Id.* at ¶ 11.  When Plaintiffs confronted Defendant, she admitted she had done so and agreed to make restitution of $3,850.65.  *Id.* at ¶ 12-13.  Defendant reimbursed Plaintiffs in that amount in January 2007.  *Id.* at ¶ 14.

Subsequently, Plaintiffs learned that Defendant's use of Plaintiffs' accounts was more extensive.  *Id.* at ¶ 15.  Specifically, Defendant used Plaintiffs' signature stamp to write fifteen

checks to "cash," totaling more than $13,000.00, all of which she endorsed and cashed. *Id.* at ¶ 16. Plaintiffs also discovered Defendant had made payments to herself or to her personal creditors using electronic fund transfers, Plaintiffs' signature stamp and Plaintiffs' checking accounts. *Id.* at ¶ 17.

Plaintiffs further allege Defendant attempted to conceal her misdeeds. *Id.* at ¶ 18-25. For example, in February 2007, Plaintiff Alicia Patterson observed Defendant attempting to take out a bag of garbage, which aroused Plaintiff's suspicions. *Id.* at ¶ 18. Accordingly, Plaintiff instructed Defendant not to carry the garbage outside. *Id.* However, after Plaintiff observed Defendant take the garbage out, she searched its contents and found "duplicate bank statements and copies of checks with white-out to obscure the memo notations." *Id.* at ¶¶ 18-19.

This discovery prompted Plaintiffs to obtain and review additional copies of their bank statements, which revealed "white-out on the copies" of bank statements and memo entries on various checks. *Id.* at ¶ 20-21. Plaintiffs also reviewed surveillance tapes created by a security camera, which showed Defendant removing boxes of documents from the home office and placing them in her car. *Id.* at ¶ 23.

Additionally, Defendant deleted files from the laptop computer and installed a "shredding" software to destroy files on the laptop computer and render them unrecoverable. *Id.* at ¶ 24. As a result of Defendant's conduct, Plaintiffs were required to expend "substantial funds, in excess of five thousand dollars," in order to retrieve their "deleted and destroyed" financial records. *Id.* at ¶ 25. Plaintiffs' efforts in this regard included retaining computer forensic experts to attempt to restore deleted files; obtaining duplicate financial records from

various financial institutions; and hiring an accountant to attempt to reconstruct their financial information. *Id.*

## B. Procedural History

On December 21, 2007, Plaintiffs filed their original complaint ("Original Complaint"). Dkt. 1. Plaintiffs' Original Complaint asserted three counts against Defendant for: (1) violation of the CFAA, 18 U.S.C. § 1030; (2) common law fraud; and (3) breach of the duty of loyalty. *Id.* On February 18, 2008, Defendant filed a motion to dismiss all three counts. Dkt. 13. The district court granted Defendant's motion on June 25, 2008, dismissing Plaintiffs' Original Complaint, without prejudice, and granting Plaintiffs leave to file an amended complaint. Dkt. 22. Specifically, the district court found Plaintiffs had failed to state a claim under the CFAA because their mere allegation that the computer at issue qualified as a "protected computer" under the statute was "pure speculation," as "[t]he complaint contain[ed] no allegations that would suggest that the computer was used in interstate commerce." *Id.* Thus, the district court dismissed Count I for failure to state a claim, and also dismissed, without prejudice, the state law claims. *Id.*

Plaintiffs filed an Amended Complaint, which contains the same three counts alleged in the Original Complaint. Dkt. 23. In their Amended Complaint, Plaintiffs include additional allegations. Defendant moved to dismiss all three counts. Dkt. 28.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Concentra*, 496 F.3d at 776 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964 (2007)). The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct at 1964-65. Additionally, the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.' " *Concentra*, 496 F.3d at 776 (quoting *Twombly*, 127 S.Ct. at 1965). If the allegations do not suggest such a right to relief, "the plaintiff pleads itself out of court." *Id.* When ruling on a motion to dismiss, the Court takes "as true all well-pleaded factual allegations in the complaint and make[s] all plausible inferences from those allegations in the plaintiffs' favor." *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir. 2007).

## III. DISCUSSION

Defendant now seeks to dismiss all three counts of Plaintiffs' Amended Complaint. First, Defendant seeks to dismiss Count I pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In addition, Defendant argues that if the Court dismisses

Count I, this Court should decline to exercise subject matter jurisdiction over the state court claims in Counts II and III. Second, Defendant seeks to dismiss Count II pursuant to Rule 10(b) for failure to state claims based on separate legal theories in separate counts. Third, Defendant seeks to dismiss Count III pursuant to Rule 8 as being redundant of Count II.

## A.    Count I – Violation of CFAA, 18 U.S.C. § 1030

Defendant seeks to dismiss count I of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6), for failure to allege the requisite elements of a CFAA claim. To state a claim under the CFAA, Plaintiffs need only allege the required elements pursuant to Rule 8(a)(2)'s notice pleading standard, not the heightened pleading standard of Rule 9(b). *P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC*, 2007 WL 708978, at *6 (D.N.J. Mar. 5, 2007) (citing cases holding CFAA claims must satisfy general notice pleading requirements of Rule 8(a), not the heightened pleading standard of Rule 9(b)). The CFAA is primarily a criminal statute, but it provides for a private cause of action where a plaintiff meets certain requirements. *See* 18 U.S.C. § 1030(g).[2] To bring a civil action, a plaintiff must show a violation of one of the CFAA's substantive provisions, as set forth in section 1030(a), and allege the existence of at least one of the five numbered clauses of subsection 1030(a)(5)(B). *Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc.*, 534 F.Supp.2d 1204, 1210 (N.D. Ill. 2008).

Defendant contends Plaintiffs fail to allege the requisite elements: (1) that Defendant used a "protected computer"; (2) that Defendant's conduct involved an interstate or foreign

---

[2]Section 1030(g) provides, in relevant part, that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

communication; and (3) that Plaintiffs suffered losses recoverable under the Act. Plaintiffs argue they have set forth facts to show Defendant violated multiple sections of the CFAA. Specifically, Plaintiffs allege Defendant violated subsections (a)(2)(C) and (a)(5)(A).

### 1. Section 1030(a)(2)(C)

Plaintiffs claim Defendant violated section 1030(a)(2)(C). A violation occurs when an individual "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C).

### a. Protected Computer

As a threshold matter, the Court must determine whether the computer at issue qualifies as a "protected computer" under the statute. The CFAA defines a "protected computer" as a computer used exclusively (A) by the federal government or a financial institution *or* (B) one that "is used in interstate or foreign commerce or communication . . . ." 18 U.S.C. §§ 1030(e)(2)(A) & (B). The CFAA defines "protected computer" in the disjunctive. *See* 18 U.S.C. § 1030(e)(2)(A)-(B). This Court will focus its analysis solely on (e)(2)(B) because (e)(2)(A) is inapplicable to this case.

This is not difficult to allege. Indeed, it suffices to state the computer was used for the business and the business operated in two different states. *Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314 (D. Conn. 2008). For example, in *Modis, Inc.*, the court reasoned that a former employer's factual allegations concerning office locations in two different states set forth a plausible claim that a former employee engaged in an interstate or foreign communication. *Id.*

at 319. Thus, the court held the computer the former employee used was a protected computer used in interstate commerce or communication. *Id.*

A computer used in conjunction with a business' efforts to conduct sales across state lines qualifies as a protected computer. For example, in *Nordstrom Consulting, Inc. v. M & S Tech., Inc.*, the court found computers used by the defendant's company in its business of producing and selling visual acuity systems, including sales across state lines, qualified as protected computers because they were used in interstate commerce. 2008 WL 6236600, at *12 (N.D. Ill. Mar. 4, 2008).

In addition, a computer that provides access to worldwide communications through applications accessible through the internet qualifies as a protected computer. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 849-50 (1997) (describing the internet as an international network of interconnected computers); *Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 248 F.R.D. 598, 602 (D. Kan. 2008) ("As a practical matter, a computer providing a 'web-based' application accessible through the internet would satisfy the 'interstate communication' requirement"); *Becker v. Toca*, 2008 WL 4443050 (E.D. La. Sept. 26, 2008) (concluding law firm's allegation that its computers were connected to the internet satisfied the statutory requirement that computers must at least be used in interstate commerce or communication to be protected); *Credentials Plus, LLC v. Calderone*, 230 F.Supp.2d 890 (N.D. Ind. 2002) (finding computer used to send and receive e-mail to customers throughout the country qualified as a protected computer).

Plaintiffs allege they conducted business in Illinois and Wisconsin; Defendant was provided with a laptop computer to transact business with Plaintiffs' customers, vendors and personal creditors in twenty-two states; and Defendant used the laptop computer to "engage in e-mail communications and on-line remittance and transfer of funds in interstate commerce." Am. Comp. at ¶¶ 1, 2, 10. As a result, the Amended Complaint satisfies the statutory requirement that the computer at issue must be "used in interstate . . . commerce or communication," thereby qualifying as a protected computer under the CFAA. 18 U.S.C. § 1030(e)(2)(B).

### b. Conduct Involving an Interstate or Foreign Communication

Defendant argues the Amended Complaint fails to satisfy the CFAA's requirement that Defendant's conduct involve an interstate or foreign communication. Defendant asserts that although Plaintiffs allege they conduct business in Illinois and Wisconsin, communicate with vendors and creditors in different states, and have an internet connection, Plaintiffs fail to allege how Defendant's conduct with respect to the protected computer involved interstate communication.

The plain language of section 1030(a)(2)(C) requires that the conduct of unlawfully accessing a computer, and not the obtained information, must involve an interstate or foreign communication. *See C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, 2005 WL 3077998, at *4 (N.D. Ill. Nov. 16, 2005) (citing *Charles Schwab & Co., Inc. v. Carter*, 2005 WL 2369815, at *8 (N.D. Ill. Sep. 27, 2005) (downloading substantial volumes of files from plaintiff's computers involved interstate commerce because plaintiff maintained interstate

computer network on which files were stored)); *Modis*, 531 F.Supp.2d at 318-19 (Defendant's conduct involved an interstate or foreign communication where plaintiff had offices in two different states and defendant accessed information maintained in its secured database).

Here, Plaintiffs do not specifically allege the protected computer had access to an interstate computer network or server on which files were stored. Thus, this case is distinguishable from *Carter* and *C.H. Robinson Worldwide, Inc.*, where defendants accessed computer files stored on a multi-state computer network. In this case, Plaintiffs allege that "Defendant's duty of loyalty to the Plaintiffs precluded her from deleting files from her protected laptop computer which would allow Plaintiffs to properly track their finances and permit the Plaintiffs to identify Defendant's misconduct while she was still Plaintiffs' agent and employee." Am. Comp. at ¶ 27. In their Response, Plaintiffs aver that Defendant violated section 1030(a)(2)(C) when she intentionally accessed a protected computer without authorization and "obtained, altered and deleted financial and business records." Dkt. 38. Plaintiffs do not specifically allege whether these records were located on an interstate computer network or on the internet, nor do they assert that Defendant accessed a web-based application. Instead, the more reasonable inference, especially when considering the nature and extent of Plaintiffs' efforts to recover the deleted financial and business records, is that such files were stored only on the hard drive of the individual protected computer in Plaintiffs' Illinois home office.

However, contrary to Defendant's assertions, Plaintiffs' allegations that Defendant made electronic fund transfers directly from Plaintiffs' accounts to Defendant and to her creditors

constitute conduct that involved interstate or foreign communications. *See* Am. Comp. ¶ 17. Plaintiffs expressly incorporate by reference each of their allegations in paragraphs 1 through 25. *See id.* at ¶ 26. Although no case law specifically addresses electronic fund transfers in the context of section 1030(a)(2)(C), *Zero Down Supply Chain Solutions v. Global Transp. Solutions* is instructive. 2008 WL 4642975 (D. Utah Oct. 17, 2008). In that case, the complaint alleged that the defendants, without authorization or in excess of their authorization, accessed plaintiffs' online bank account, changed the user name and password, and obtained and falsely manipulated financial information to divert plaintiffs' assets. *Id.* at *8. Based in part on that allegation, the court found the plaintiffs did state a claim for relief under the CFAA. *Id.*

Similarly, evidence that Defendant made electronic fund transfers to herself and to her personal creditors, including Wells Fargo Financial and Sam's Club, demonstrates Defendant's conduct involved interstate communications in that she accessed Plaintiffs' online bank account, obtained financial information, and diverted Plaintiffs' assets. Accordingly, viewing the allegations in a light most favorable to Plaintiffs, the factual allegations set forth a plausible claim that Defendant's conduct was connected to interstate communication pursuant to section 1030(a)(2)(C).

## 2. Section 1030(a)(5)(A)

Plaintiffs claim Defendant violated sections 1030(a)(5)(A)(i) and (a)(5)(A)(iii) of the CFAA. Defendant argues Plaintiffs fail to state a claim under any section of the CFAA, but limits her contention with respect to sections (a)(5)(A)(i) and (a)(5)(A)(iii) to the assertion that Plaintiffs fail to allege facts showing that the computer at issue qualifies as a "protected

computer." *See* Dkt. 36. As discussed above, this Court disagrees with Defendant. The computer at issue qualifies as a "protected computer" under the CFAA. *See supra*, Part III.A.1.a.

### a. Section 1030(a)(5)(A)(i)

Plaintiffs allege Defendant violated section 1030(a)(5)(A)(i) of the CFAA. A violation occurs when an individual "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A)(i). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

Although the CFAA does not define "transmission," a "transmission" includes the installation and use of an erasure program on a computer. *Int'l Airport Centers v. Citrin*, 440 F.3d 418, 419-20 (7th Cir. 2006). In *Citrin*, the Seventh Circuit held a defendant's use of an erasure program to delete files from the plaintiff's computer constituted a transmission, even though the complaint did not indicate whether the program was downloaded from the Internet or copied from a disk inserted into a disk drive. *Id.* The court reasoned that the exact mode of transmission is irrelevant, explaining that whatever method was used, a program intended to cause "damage" as defined by the CFAA was transmitted to the computer electronically. *Id.* at 419. Thus, the plaintiff sufficiently alleged a transmission where it stated the defendant downloaded a program designed to permanently erase files. *Id.* at 419-20.

Although the Seventh Circuit's primary focus in *Citrin* centered on the meaning of the term "transmission" as used in section 1030(a)(5)(i), the court also found that the plaintiff had sufficiently stated a civil claim for "damage." *Citrin*, 440 F.3d at 418-20. Specifically, the court reasoned that it is sufficient to show damage under the CFAA where a program intended to delete files is installed and files are subsequently deleted because such an erasure program impairs the integrity or availability of data, programs, or information on the computer. *Id.* at 419-20. In contrast, the statutory requirement of damage is not satisfied where plaintiffs fail to allege that data stored in a computer was deleted. *See Garelli Wong & Associates, Inc. v. Nichols*, 551 F.Supp.2d 704, 709 (N.D. Ill. 2008) (distinguishing *Citrin* and finding statutory requirement of damage not satisfied where plaintiff failed to allege deletion of data stored in the computer and instead merely alleged defendant copied and emailed computer files).

In this case, Plaintiffs successfully state a claim that Defendant violated section 1030(5)(A)(i). Plaintiffs allege Defendant intentionally accessed their protected computer in a manner which exceeded her authority, and intentionally, recklessly or otherwise caused damage, including the permanent deletion and shredding of substantial files. Am. Comp. at ¶ 28. Plaintiffs also allege that Defendant deleted various files from the laptop computer and caused a "shredding" software to be installed on the laptop computer to destroy the computer files and render them unrecoverable. *Id.* at ¶ 24. While Plaintiffs acknowledge that the precise method of installation of the erasure program is unknown, the Seventh Circuit recognizes that the precise mode of transmission is irrelevant. *Citrin*, 440 F.3d at 419. Finally, Plaintiffs allege that, as a result of Defendant's conduct, they were required to expend substantial funds in the

attempt to retrieve their deleted and destroyed financial records. *Id.* at ¶ 25. In sum, the Court finds the allegations in the Amended Complaint, when viewed in a light most favorable to Plaintiffs, sufficiently allege a claim under section 1030(a)(5)(A)(i).

### b. Section 1030 (a)(5)(A)(iii)

Plaintiffs also allege that Defendant violated section 1030(a)(5)(A)(iii), which provides that a violation occurs when an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage." 18 U.S.C. § 1030(a)(5)(A)(iii). For the reasons set forth in prior sections of this opinion, the Court finds Plaintiffs allege facts sufficient to state a claim for violation of this section.

### 3. Loss Under Section 1030(a)(5)(B)(i)

Defendant argues Plaintiffs fail to allege they suffered loss pursuant to the CFAA. Plaintiffs allege they incurred damages and loss in excess of $5,000 as a proximate result of Defendant's conduct. A civil action for a CFAA violation may be brought only if the conduct involves one of the factors in provisions (a)(5)(B)(i) to (v). *See* 18 U.S.C. § 1030(g). Those listed factors include "loss to one or more persons during any one-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(a)(5)(B)(i). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Costs incurred to assess and repair damage to a computer or to files stored on the computer qualify as compensable because they are a "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *See First Mortgage Corp. v. Baser*, 2008 WL 4534124, at *3 (N.D. Ill. Apr. 30, 2008); *Hasan v. Foley & Lardner, LLP*, 2007 WL 2225831, at *5 (N.D. Ill. July 26, 2007). Indeed, such costs are recoverable regardless of whether there is an interruption of service, and courts have sustained actions based on allegations of costs to investigate and take remedial steps in response to a defendant's misconduct. *Sam's Wines & Liquors, Inc. v. Hartig,* 2008 WL 4394962, at *4 (N.D. Ill. Sept. 24, 2008) ("*Sam's*"); *Modis*, 531 F.Supp.2d at 320 (citing *P.C. of Yonkers, Inc.*, 2007 WL 708978 at *4-5). In *Sam's*, the court found an employer properly alleged loss where it simply stated that its costs were incurred as a result of "responding to [its former employee's] conduct and conducting damage assessments." *Sam's*, 2007 WL 708978 at *4. The employer took those actions after its former employee stole and misappropriated confidential customer data stored on the employer's computer. *Id.* at *1. Similarly, in *P.C. of Yonkers, Inc.*, plaintiffs alleged losses sustained in "responding to" and "investigating defendants' actions" as well as "taking remedial steps to prevent defendants' further actions." 2007 WL 708978 at *5. The court found the CFAA encompassed such losses even though they did not derive from any change to the computers themselves or to the information contained therein. *Id.*

Defendant cites *Hasan* for the proposition that the costs included in the statutory definition of loss must be related to the computer system. 2007 WL 2225831 at *5-6. However, the *Hasan* court expressly stated this rule in the context of costs related to lost good

will.  *Id.* at *5.  In *Hasan*,  a law firm claimed that lost good will due to the unavailability of

data on its former associate's computer satisfied the statutory definition of loss.  *Id.*  The court

found that costs related specifically to lost good will were not recoverable because they did not

relate to nor result from the impairment or unavailability of data on the computer.  *Id.* at *5-6.

In contrast, in this case, Plaintiffs do not allege costs associated with lost good will.  Thus,

*Hasan* is distinguishable on that basis and because the losses alleged in this case relate to or

result from the impairment or unavailability of data on the computer.

Citing *Garelli Wong & Associates, Inc.*, Defendant also argues Plaintiffs fail to satisfy

the pleading requirements recently articulated in *Twombly,* asserting that Plaintiffs merely recite

the requirements listed in subsection (a)(5)(B)(i).  551 F.Supp.2d at 711 (citing *Twombly*, 127

S.Ct at 1965).  In *Garelli Wong & Associates, Inc.*, the complaint merely stated that

"Defendant's conduct caused losses to [Plaintiff] in excess of $5,000" and did not provide

additional elaboration.  551 F.Supp.2d at 711.  Thus, the court held the complaint did not

properly allege loss.  *Id.*  This case is distinguishable.  As *Twombly* instructs, while federal

pleading does not require detailed facts, factual allegations should provide the "grounds" of a

plaintiff's entitlement to relief above the speculative level.  127 S.Ct. at 1959.  Unlike the

plaintiff in *Garelli Wong & Associates, Inc.*, Plaintiffs in this case satisfy the jurisdictional

amount of loss because they provide the "grounds" upon which they are entitled to relief.  In

addition to stating that they had suffered damages and loss in excess of $5,000 as required by

section 1030(a)(5)(B)(i), Plaintiffs allege the following:

> As a result of the Defendant's misconduct in attempting to conceal her improper activities, Plaintiffs have been required to expend substantial funds, in excess of five thousand dollars, trying to retrieve their deleted and destroyed financial records, including retaining computer forensic experts to attempt to restore the deleted files on the laptop computer assigned to the Defendant, ordering duplicate financial records from various financial institutions, and retaining an accountant to attempt to reconstruct their financial information.

Am. Comp. at ¶ 25. These allegations provide notice that Plaintiffs are asserting losses related to response costs. Moreover, such losses are explicitly included in the statute. Specifically, Plaintiffs' alleged losses comprise costs incurred in "responding to an offense" and "restoring the data, program, system or information to its condition prior to the offense." *See* 18 U.S.C. § 1030(e)(11). Thus, the CFAA's definition of "loss" encompasses Plaintiffs' asserted incurred costs. The alleged losses in this case result from the impairment or unavailability of data on the computer and are thus compensable pursuant to the plain language of the statute.

In sum, this Court finds Plaintiffs' allegations in their Amended Complaint are sufficient to plead loss. As a result, because Plaintiffs sufficiently allege the predicates required to assert a claim under the CFAA, Defendant's motion to dismiss Count I is denied.

**B.      State Law Claims – Counts II and III**

Because Plaintiffs' federal count will not be dismissed, Plaintiffs' state law claims also remain pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. For the following reasons, this Court finds that Plaintiffs sufficiently state claims in counts II and III.

**1.      Count II – Common Law Fraud**

In seeking to dismiss count II pursuant to Rules 9(b) and 10(b) of the Federal Rules of Civil Procedure, Defendant argues that Plaintiffs (1) fail to allege facts with sufficient

particularity as Rule 9(b) requires; and (2) fail to separately state the theories of liability available for common law fraud, in violation of Rule 10(b). This Court disagrees.

First, Plaintiffs properly state a claim for common law fraud in that they sufficiently allege the requisite elements pursuant to Rule 9(b)'s heightened pleading standard. Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this requirement, a plaintiff must allege "the who, what, where, when, and how" of its fraud claim. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In Illinois, the elements of common law fraud are: (1) the defendant's false statement of a material fact or concealment of a material fact if the defendant had a duty of disclosure by virtue of a special or fiduciary relationship with the plaintiff; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) damages. *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 791 (Ill. 2008); *Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869, 876 (Ill. 2003).

In Count II, which incorporates by reference all of the prior allegations in the Amended Complaint, Plaintiffs state the elements of common law fraud with the required specificity. First, Plaintiffs allege that Defendant owed Plaintiffs a duty of loyalty while she served as their administrative assistant; that the intentional omission or concealment of a material fact may be the basis of a fraud action when such a relationship gives rise to the duty to speak; and that despite her duty of loyalty, Defendant failed to disclose and intentionally misrepresented the

18

full scope of her wrongful activities to Plaintiffs. For example, the allegations that Defendant made false statements of material fact by telling Plaintiffs that her embezzlement had been limited to $3,850.65 and that Defendant concealed her misconduct by "whiting out" financial records show that Plaintiffs set forth sufficiently detailed allegations with respect to the first element. With respect to the second and third elements, Plaintiffs assert that Defendant intentionally misrepresented and concealed her activities from Plaintiffs in order to maintain her position and prolong her improper activities. Fourth, Plaintiffs allege that they relied upon Defendant's misrepresentations and allowed Defendant to continue as their agent and employee. Finally, Plaintiffs allege that they suffered actual economic damages in excess of $100,000 as a proximate result of Defendant's fraudulent conduct. Plaintiffs' allegations fulfill the particularity requirement of Rule 9(b).

Second, contrary to Defendant's assertion that Plaintiffs were required to separately state the theories of liability available for common law fraud, Plaintiffs' allegations satisfy Rule 10(b). Rule 10(b) states: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Separate counts are required only when necessary to clarify the claims. *Landmark Document Services, LLC v. Omega Litig. Solutions, LLC*, 2006 WL 2861098, at *8 (N.D. Ill. 2006). Rule 10(b) is rarely a basis for dismissing a complaint unless the complaint is not understandable *and* does not provide the defendant with notice of the claim. *Id.* at *8-9. It is clear that Plaintiffs provided Defendant with notice of the nature of their common law fraud claim. Further, the Amended Complaint is understandable. Not only did Plaintiffs allege the

requisite elements, they also titled count II as a claim for common law fraud.

In sum, this Court finds Plaintiffs' allegations are sufficient to plead common law fraud. As a result, Defendant's motion to dismiss Count II is denied.

### 2. Count III – Breach of Duty of Loyalty

Defendant seeks to dismiss count III pursuant to Rule 8(a), which provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Specifically, Defendant argues that this count should be stricken because it is duplicative of count II and thus fails to constitute a short and plain statement as Rule 8(a) requires. This Court disagrees.

Demonstrating that common law fraud and breach of duty of loyalty are separate causes of action, numerous recent cases include both as separate claims. *See, e.g., Am. Auto Guardian, Inc. v. Kramer*, 2008 WL 4553092, at *7-8 (N.D. Ill. 2008); *Gas Tech. Inst. v. Rehmat*, 2006 WL 3743576, at *1, 24, 27-28 (N.D. Ill. 2006); *Talton v. Unisource Network Services, Inc.*, 2004 WL 2191605, at *1, 12-13 (N.D. Ill. 2004). Thus, count III is not duplicative of count II.

Moreover, it is evident that Plaintiffs properly allege a claim for breach of duty of loyalty. Under Illinois law, Plaintiffs state a claim for breach of a fiduciary duty by alleging (1) the existence of a fiduciary duty; (2) breach of that duty; (3) an injury; and (4) proximate cause between the breach and the injury. *Am. Auto Guardian, Inc.*, 2008 WL 4553092 at *7; *In re Estate of Lis*, 847 N.E.2d 879, 885 (Ill. 2006). Employees owe a duty of loyalty to their employer under Illinois law. *Am. Auto Guardian, Inc.*, 2008 WL 4553092 at *7. Because of the duty of loyalty, "a fiduciary cannot act inconsistently with his agency or trust." *Beltran v.*

*Brentwood North Healthcare Ctr., LLC*, 426 F.Supp.2d 827, 831 (N.D. Ill. 2006). "Embezzlement of an employer's funds is a classic example of breach of fiduciary duty." *Am. Auto Guardian, Inc.*, 2008 WL 4553092 at *7.

Here, Plaintiffs successfully allege a breach of Defendant's duty of loyalty. First, Plaintiffs allege Defendant owed Plaintiffs such a duty by virtue of her status as their employee. Second, Plaintiffs aver Defendant breached her duty of loyalty by embezzling Plaintiffs' funds to pay her personal expenses and falsifying and destroying records to conceal her misconduct. Third, Plaintiffs claim they sustained actual economic damages in excess of $100,000. Finally, Plaintiffs allege this direct injury was a proximate result of Defendant's breach of her duty of loyalty. In sum, this Court finds Plaintiffs' allegations are not duplicative and are sufficient to allege a breach of duty of loyalty. As a result, Defendant's motion to dismiss Count III is denied.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Defendant's motion to dismiss Plaintiffs' Amended Complaint. Defendant shall file her answer to Plaintiffs' Amended Complaint on or before December 5th, 2008.

SO ORDERED THIS 14th DAY OF NOVEMBER, 2008

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Daniel P. Hogan
McCabe & Hogan, P.C.
19 South Bothwell Street
Suite 200
Palatine, IL 60067

Counsel for Plaintiffs

James P. Kelly
Maura K. McKeever
Maryann M. Bullion
Matuszewich, Kelly & McKeever, LLP
453 Coventry Lane, Suite 104
Crystal Lake, IL 60014

Counsel for Defendant